ALEXANDER H. DINKINS *vs.* WILLIAM S. BAILEY, Probate Judge, use of WILLIAM F. WALKER:

An action for a *devastavit,* upon the bond of an administrator, cannot be maintained by a creditor who has not obtained a judgment against the administrator, to be levied of the goods and chattels of his intestate in his hands to be administered.

Where a judgment is rendered against a principal and surety, and the surety, after the death of the principal, pays the judgment, he thereby becomes a simple contract creditor of the estate of the principal, and must prosecute his claim to judgment against the administrator before he can maintain an action for a *devastavit,* at law.

*Semble,* that in a court of equity, a surety who has paid a judgment for his principal would have the right to be substituted to all the rights of the plaintiff in the judgment; but the rule is different at law.

ON appeal from the circuit court of Madison county; Hon. R. C. Perry, judge.

The opinion of the court contains a sufficient statement of the facts of the case.

*D. Mayes*, for appellant.

This was an action of debt, against Dinkins and Mrs. Branch, and their securities, brought on the bond they had given as administrator and administratrix of the estate of A. Branch, deceased, to recover for a supposed *devastavit* as such administrator and administratrix.

Walker, the relator, had not sued them to establish his demand against the estate of their intestate. Dinkins demurred. The suit was dismissed against the other defendants, and judgment rendered against Dinkins, on the demurrer. The cause is brought to this court by him.

The only question is, Can there be a recovery against the administrator, in debt, suggesting a *devastavit*, without having first recovered a judgment against him, as administrator.

All the authorities are, that the debt against the intestate must first be established. 2 Chitty on Plead. (in note) 184; 2 Lomax on Ex'rs, 412, 413, 458; *Burnett et ·al.* v. *Harwell*, 3 Leigh's Rep. 94; Toller's Law Ex's, 469; 1 Saund. Rep. 219, (in note;) *Hobbs et. al.* v. *Middleton*, 1 J. J. Marsh. 181; *Braxton* v. *Winslow*, 1 Wash. Rep. 31; *Gordon's Adm.* v. *Frederick Justices*, 1 Munf. Rep. 1. See *Simms* v. *Nash*, 1 How. 271.

I might refer to many other cases, but the foregoing are deemed sufficient, when there is nothing to the contrary.

*Lawson*, for appellant.

The only question presented by the record in this case is, whether a suit can be maintained upon an administration bond against the administrators and their sureties, before the plaintiff or creditor has recovered a judgment at law against the administrators for the debt of the intestate, to be levied of the assets to be administered.

There is no pretence that Walker had recovered a judgment, either against the intestate or administrator, before this suit on the bond. In the case of *Thomson, Judge*, v. *Searcy &*

*Fearn*, all the authorities are reviewed, and the conclusion reached, that the suit on the bond cannot be maintained. 6 Porter, 393. No one, however just his demand, can be regarded as a creditor, for the purpose of subjecting the administrator to personal accountability, who has not first made out a title by recovering a judgment to be levied *de bonis intestati.* 6 Ib. 403; *Faulk* v. *Judge of Monroe County Court,* 2 Ib. 538; *Eaton* v. *Benefield,* 2 Blackf. Rep. 52; *Call* v. *Ruffin,* 1 Call's Rep. 333. It is useless to quote other authorities.

*A. H. Handy,* for appellee.

The judgment overruling the demurrer in this case is alleged to be erroneous, because no judgment had been rendered previous to the institution of this suit, fixing the liability of the administrator to pay the claim of Walker against the estate of Branch. We contend,

I. That no such judgment is necessary under our statute.

II. If it had been required, that the judgment against the administrators, in behalf of the original creditors, remaining unpaid, enured to the benefit of Walker, and was sufficient for that purpose.

1. By the common law, three modes of proceeding to establish a *devastavit*, prevailed. 1st. After judgment *de bonis testatoris* against the administrator, execution issued, upon which, if the sheriff returned *nulla bona* and *devastavit*, (as he might do,) the plaintiff had execution immediately against the defendant *de bonis propriis.* This was the ancient practice. 1 Ld. Raym. 590 ; Tidd's Pr. 1025, 1113, 9th edit. 2d. Subsequently the *scire fieri* inquiry was adopted, after return of *nulla bona*, warning the defendant to appear and answer the charge of *devastavit*, and unless he did so successfully, execution was awarded against him *de bonis propriis.* 3d. Afterwards the action of debt on the judgment, alleging a *devastavit*, took the place of the *scire fieri* inquiry, and is the mode of proceeding usually employed at this day. 2 Wms. Ex'rs, 1223, 1224, (1st Amer. edit.) ; *Vick* v. *House*, 2 How. 624. Neither the *scire fieri* inquiry nor the action of debt were required as a means of showing a *devastavit*, to the end that

another action might thereupon be. brought for the *devastavit;* but the judgment in both modes of proceeding was final, *de bonis propriis* of the defendant. 2 Wms. Ex'rs, 1225.

Thus it appears that the position taken in behalf of the appellant, under the authorities in Virginia, 1 Munf. 1, and 3 Leigh, 94, that three suits are necessary, in order to consummate a judgment *de bonis propriis* for a *devastavit*, is unsupported by any thing in the common law authorities; and it is shown, that after judgment *de bonis testatoris* against the administrator and return of execution *nulla bona*, the plaintiff might sue and obtain a final judgment against the administrator in his private capacity.

Thus stood the law when the act of 1830 (Hutch. Dig. 678, sec. 4) was passed, enacting, that the act to which it was an amendment, " shall be so construed as to authorize any suit or suits to be brought by persons interested in the estate of any deceased person, as creditors or otherwise, on any bond given by administrators or executors and their sureties, jointly, in the first instance; and in no case shall a separate suit be necessary against any executor or administrator, for the establishment of a *devastavit* prior to the liability of such sureties."

If it be said that the administrator is not in default until the claim be established, we reply, that there is another mode of establishing a claim against a decedent's estate, besides a judgment at law. The probate and allowance of the claim, by the probate court, is a full justification to the administrator in paying it. If that was done here, (and it will not be intended that it was, because the declaration alleges that it was a just and legal claim against the estate, and that it was the duty of the administrator to pay it, which is admitted by the demurrer,) the administrator was in default, in not applying the funds in his hands to its payment.

But the judgment against the appellant in this case is against him alone, and not against the sureties. The rule rendering three suits necessary, could have no application to such a case, (even if required in any case,) for the second suit, according to argument of counsel, is only necessary, in order to lay the

foundation for the third suit against the sureties. So far as the administrator alone is concerned, the judgment fixing the *devastavit* would bind him, and but two suits would be necessary to charge him. He is chargeable, then, by one suit, because the statute authorizes suit against him in the first instance for the *devastavit*, without any separate action to establish the claim or fix his liability. And, so far as the administrator is concerned, it can operate no hardship to him to be sued in one and the same action, both for the establishment of the plaintiff's claim, and to charge the administrator for *devastavit.*

The statute referred to, has never received a direct and authoritative exposition in a case of this kind by this court; yet, in the case of *Burrus* v. *Thomas,* 13 S. & M. 464, 465, the court, per Sharkey, C. J., very plainly intimates that the construction herein contended for is the true and proper one. And we submit, that it is a construction which should receive the sanction of this court. 1st. Because it best comports with the letter and spirit of the statute. 2d. While it can work no prejudice to faithful administrators and their sureties, who have an ample opportunity to defend such a suit as to every essential particular, it will expedite the remedy of parties against unfaithful administrators for the recovery of their rights, and tend to promote punctuality and fidelity in such trusts.

2. But if the above positions are wrong, still we insist that there was a judgment rendered against the administrators of Branch; that the original judgment rendered against them remaining unsatisfied, Walker was entitled to the benefit of it upon his paying the debt as surety; that such payment operated as an assignment of the original judgment against them both in equity and at law, and entitled Walker to the benefit of every means of coercing payment which the original creditor had. This is abundantly supported by authority. See the lucid argument of Sir Samuel Romilly, in *Craythorne* v. *Swinburne,* 14 Ves. 162; *Clason* v. *Morris,* 10 J. R. 539; Theobald, Prin. & Surety, 252, § 270; *Norwood* v. *Norwood,* 2 Harr. & John. 238.

And this is a right, available both at law and in equity.

Where there has been no assignment, it is an equitable right in the surety, but it is one of the numerous equitable rights affording a sufficient foundation for a legal remedy, and although the right results from equitable principles, the remedy is available at law. This is fully supported by authority. *Southron* v. *Reed*, 4 Harr. & John. 307; *Merryman* v. *The State*, 5 Ib. 423; *Hollingsworth* v. *Floyd*, 2 Harr. & Gill, 87; *N. York State Bank* v. *Fletcher*, 5 Wend. 85–89. Several of these cases hold that Walker would have been entitled to execution upon the original judgment against Branch's administrators, by reason of his payment of the debt, and of the assignment thereby resulting to him; and *à fortiori* he is entitled to consider that judgment as an establishment of his claim, to the end of instituting this action. And the cases cited from Maryland are especially applicable, because there is a statute there upon the same principle as our own, providing the means by which sureties paying judgments shall obtain a formal assignment thereof. Yet the courts there have sustained actions similar to this, brought without such steps being taken to obtain an assignment, and without any assignment in form having been made, upon the well settled principle, that an assignment results by operation of law upon the payment of the debt by the surety. See *Southron* v. *Reed*, *supra*, and the argument of plaintiff's counsel.

If it be said that, to allow Walker the benefit of the original judgment, as establishing his claim against Branch's estate, would be to conclude the administrator of all defence that might exist to a suit brought directly by Walker, to recover the money paid by him, such as set-off, payment, &c.; we reply, that such defence would not be debarred in this action. It is well settled, that the judgment and return of *nulla bona*, are not conclusive evidence of *devastavit* in this state, 2 How. 617; 7 Ib. 114; and it is surely competent for the administrator, in a suit on his bond for *devastavit*, notwithstanding the original judgment, to show that the plaintiff has sustained no damage, and should not recover, because the original judgment affords merely *primâ facie* evidence that the plaintiff is entitled to recover in an action for *devastavit*, and the statute expressly

exempts the administrator from any liability beyond the assets of the estate, for any omission or mistake in pleading.

It is, therefore, confidently submitted, that the declaration shows a sufficient cause of action, that the demurrer was properly overruled, and that the judgment shall be affirmed.

Mr. Justice FISHER delivered the opinion of the court.

The action was brought upon the bond given by Alexander H. Dinkins and Sarah Branch, as administrator and administratrix of the estate of Armistead Branch, deceased. The suit was commenced against the principals and sureties, but discontinued at the trial as to all but Dinkins, the appellant.

The facts are briefly these. Some time in the year 1837, Armistead Branch, the intestate, as principal, William F. Walker, the relator, and others, as his sureties, executed two promissory notes for large amounts to Jeffrey & Crane. Armistead Branch having died before the year 1840, suits were brought in the circuit court of the United States at Jackson, upon said notes against Dinkins and Mrs. Branch, as administrator and administratrix of A. Branch's estate. Judgments were recovered at the May term, 1840, of said court, and executions issued thereon, and were placed in the hands of the marshal, who returned the same to the November term, 1840, of said court, in effect, *nulla bona*. It is also averred, that the administrator and administratrix received assets belonging to their intestate, amounting in value to the sum of $10,000, with which they could have paid the said judgments, or some part thereof.

The declaration also avers that the same plaintiffs, (Jeffrey & Crane,) at the November term, 1839, of the same court, recovered judgments against him, and that he was forced to pay the said judgments, by reason of the failure of the said administrator and administratrix to pay the judgments recovered against them, to be levied of the goods, chattels, &c. of the said A. Branch, deceased.

To the declaration containing these facts, Dinkins, the appellant, filed a demurrer, which was overruled by the court below, and judgment with writ of inquiry rendered against

Dinkins *v.* Bailey et al.

him. This writ of inquiry was executed at the April term, 1849, of the Madison circuit court, when a jury assessed the damages against appellant at $4000, for which amount the court rendered a judgment in the usual form.

Upon this state of facts, the question presenting itself for our consideration is, whether Walker, the relator, can maintain this action for a *devastavit*, before establishing his demand against Branch's estate, by a judgment to be levied of the goods and chattels, &c. in the hands of the administrator and administratrix, to be administered. Upon a careful examination of all the authorities, we have been able to find no case in which an action can be sustained at the instance of a creditor for a *devastavit* by the administrator, before a judgment recovered to be levied *de bonis intestati.* This point appears to be too well settled even to require citation of authority.

But it is insisted that this rule has been changed by the statute of 1830. Hutch. Code, 676. This statute provides that a suit may be brought by a person interested in the estate of a deceased person, as creditor or otherwise, on any bond given by administrators or executors and their sureties, jointly in the first instance ; and in no case shall a separate suit be necessary against any executor or administrator, for the establishment of a *devastavit* prior to the liability of such sureties. Prior to the passage of this statute, a separate suit was necessary against an executor or administrator, to establish a *devastavit* before an action could be sustained against the sureties on the bond. The statute merely dispensed with this separate action, and gave any person interested as creditor or otherwise, a right to bring a joint action against the administrator and sureties, in the first instance; and in this joint action established what could only be done before the statute in a separate action against the administrator.

It is, however, insisted by the counsel for the defendant, that Walker, having paid the judgments recovered against him, stands in the attitude of a judgment creditor. A surety who pays a debt for his principal, only becomes a simple contract creditor. The fact that he was a surety, and as such paid the judgments, must be judicially ascertained before he can be

regarded in the light of a judgment creditor. It may be true that the surety would have, in a court of equity, a right to be substituted to all the rights of the plaintiffs in the judgments, as contended by counsel; but no question as to the equitable rights of the defendant can arise in this action, and we only feel ourselves called upon to decide such questions as the record presents.

The judgment reversed, demurrer sustained to the declaration, and cause remanded.